**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| PATRICIA SHEVLIN, | |
| Plaintiff, | NO. _____ |
| v. | |
| TRACEY LYNN REID<br>GERALDINE LEE SOUZA<br>SAVANNAH MARIE WHITAKER, | |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Patricia Shevlin, by and through undersigned counsel, and hereby brings this Complaint and Demand for Jury Trial against the Defendants, Tracey Lynn Reid, Geraldine Lee Souza and Savannah Marie Whitaker (collectively "Defendants") and alleges as follows.

### I.       PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Patricia Shevlin ("Plaintiff") is an individual residing in Matthews, North Carolina at all relevant times herein.

2.      Defendant Tracey Lynn Reid is an individual who resides in Union, Kentucky, who has published false and defamatory statements regarding Plaintiff on the Internet.

3.      Defendant Geraldine Lee Souza is an individual who resides in Redlands, California, who has published false and defamatory statements regarding Plaintiff on the Internet.

4.      Defendant Savannah Marie Whitaker is an individual who resides in Phoenix, Arizona, who has published false and defamatory statements regarding Plaintiff on the Internet.

1

5.     Upon information and belief, the Defendants acted in concert, and as part of a joint and coordinated campaign, to purposefully defame Plaintiff and destroy her reputation.

6.     Upon information and belief, the false and defamatory statements published by Defendants ("False Statements") have been read by residents of New Hampshire and Colorado and have caused damage to Plaintiff therein.

7.     This Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## II.     FACTUAL ALLEGATIONS

8.     At all times material herein, Plaintiff was, and continues to be, an independent contractor, who's primary source of income is through selling and promoting Paparazzi Jewelry (hereinafter "Paparazzi"), both online and in person.

9.     Paparazzi has very strict rules of compliance for its independent contractors. These rules govern how independent contractors can market, advertise, and sell Paparazzi jewelry.  If compliance violations are found, Paparazzi can, and will, terminate its independent contractors and prohibit them from selling jewelry.

10.     Prior to September 28, 2021, Plaintiff had an incredibly successful business as an independent contractor for Paparazzi, and was among the top 1% of all independent contractors selling Paparazzi Jewelry.

11.     Defendants Tracey Lynn Reid and Geraldine Lee Souza were previously independent contractors who sold Paparazzi Jewelry.  Both Defendants Reid and Souza were terminated as independent contractors by Paparazzi for violations of Paparazzi compliance issues.

2

12.     Prior to September 28, 2021, Defendants Tracey Reid, Geraldine Souza and Savannah Whitaker began making videos about Paparazzi Jewelry, under a group name called "Crack the Crown".  The Defendants published these videos to various internet platforms under the name "Tea Time".

13.     Beginning September 28, 2021, Defendants, during their discussions of Paparazzi Jewelry, began making statements about Plaintiff during their "Tea Time" videos posted to Facebook.

14.     A copy of the September 28 video is located at the following URL: https://www.facebook.com/TraceyLynnReid/videos/3541160706110287

15.     In this video, Defendants Reid and Souza made false allegations against Plaintiff.  Specifically, Defendants Reid and Souza alleged that Plaintiff told her viewers to "not worry about those who had died from COVID[-19]" and that they had been "called home".

16.     This false allegation was particularly harmful to Plaintiff as Plaintiff had many people in her community who had lost loved ones and family members due to the COVID-19 pandemic.  The statements further gave the false impression that Plaintiff was encouraging others to disregard the severity of the COVID-19 pandemic.

17.     Plaintiff received numerous questions and angry comments from her followers and fellow independent contractors about these false statements.

18.     After publication of the September 28 video, Plaintiff contacted Defendants regarding the falsity of their statements.  In response, Defendants invited Plaintiff to join their next video, in order to apologize to Plaintiff and "set the record straight".

19.     On October 2, 2021, Plaintiff appeared on "Tea Time" with Defendants Reid,

Souza and Whitaker.  Plaintiff participated in discussions with Defendants, until Defendants began speaking negatively of Paparazzi Jewelry and its compliance policies.

20.    Plaintiff logged off the video call after expressing her discomfort with the topics of discussion.   After Plaintiff logged off, Defendants made disparaging remarks about Plaintiff, again stating the Plaintiff was violating the compliance standards of Paparazzi.

21.    Defendants continued publishing videos about Paparazzi Jewelry, and continued to make disparaging statements about Plaintiff.

22.    For example, on December 14, 2021, Defendants published a video to their platforms in which they accuse Plaintiff of violating Paparazzi compliance standards, and mocking or belittling a person who suffered a stroke.

23.    A copy of the December 14 video can be found at the following URL: https://fb.watch/a34-xvPO9T/

24.    Again, on December 21, 2021, Defendants published a video to their platforms in which they accuse Plaintiff of knowingly selling toxic jewelry, violating Paparazzi compliance standards, making disparaging remarks about a people suffering from postpartum depression and other disabilities, and stating that a person had a miscarriage because "they didn't pray hard enough",

25.    Further, Defendants accuse Plaintiff of taking advantage of autistic children by marketing her Paparazzi jewelry as 'fidget' jewelry.

26.    A copy of the December 21 video can be found at the following URL: https://fb.watch/a2-OB56Iy1/.

27.    On January 5, 2022, the Defendants published another video in which they accuse Plaintiff of knowingly selling toxic jewelry and suggest that Plaintiff's willful

ignorance could harm children.

28.    A copy of the January 5, 2022 video can be found at the following URL:

https://www.youtube.com/watch?v=hQdWFkopMCo

29.    The aforementioned statements will hereinafter be referred to as the False Statements.

30.    The statements contained in these videos are false as Plaintiff has never 'knowingly' sold toxic jewelry.  Further, Plaintiff has never violated the compliance rules of Paparazzi, has never made disparaging remarks about people who have suffered from postpartum depression, experienced a stroke, or had any other mental or physical disabilities. Plaintiff has never stated, and does not believe, that people have suffered injuries, medical complications, or passed away because they have not "prayed hard enough".  Finally, Plaintiff has never marketed Paparazzi jewelry in any misleading or deceptive way to try and take advantage of individuals with autism or any other medical condition.

31.    When viewed together, the False Statements published by Defendants are disparaging, impugn Plaintiff's ethical conduct and reputation, and injuriously affect Plaintiff in her trade and profession.

32.    The False Statements were published to harm Plaintiff's professional reputation and to deter other individuals from doing business with her by asserting that Plaintiff engages in fraudulent and dangerous conduct, demeans those around her, belittles people with disabilities, and tries to deceive or otherwise take advantage of people with disabilities.

33.    Contrary to the False Statements, Plaintiff has established a reputation as an upstanding and principled seller for Paparazzi Jewelry, has never sold "toxic" jewelry, has never

violated the compliance rules of her employer, has never harassed people with disabilities, or stated or insinuated that people died or became ill because they did not pray hard enough.

34.    The False Statements were seen by Plaintiff's employer, Paparazzi, and Plaintiff had to expend time and resources towards defending her reputation with her employer from the allegations of compliance standards.

35.    Upon information and belief, the False Statements have been viewed by current clients, prospective clients, and prospective contractors of Plaintiff.

36.    Defendants published the False Statements about with Plaintiff with actual malice, as Defendants knew, or showed reckless disregard for the truth, that the statements were false. Outside of the defamatory videos, Defendants continued to repeat the defamatory statements about Plaintiff and have encouraged others to engage in harassing behavior. Specifically, on Clubhouse, another social media platform, Defendants published another video to discuss Paparazzi experiences.  One or more participants voiced threats to visit Plaintiff's store and to physically harm Plaintiff. Defendants did not discourage such discourse and even audibly laughed at the harassing statements.

37.    As a direct and proximate result of the False Statements published by Defendants, Plaintiff has suffered great interruption to her daily life and damage to her reputation.  The False Statements published by Defendants were seen by numerous people in the Paparazzi community, and Plaintiff has devoted a significant amount of time and resources dealing with questions related to the False Statements and defending her reputation to her employer and those within her community.

38.    As a direct and proximate result of the Defendants' malicious attacks on Plaintiff, Plaintiff sustained severe mental distress, fearing for her safety, and living in fear that the False

Statements would be seen and believed by people within her community, and cause her to lose her ability to sell Paparazzi Jewelry.

39.     Further, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered significant financial harm and injury, including, but not limited to, a 25% decrease in revenue and sales, adverse business consequences, and other general damages detailed more fully below.

### III.   FIRST CLAIM FOR RELIEF

### *Defamation (Libel and Libel Per Se)*

40.     Plaintiff repeats and realleges each and every allegation contained above and below as if fully set forth herein.

41.     The False Statements are of and concerning Plaintiff as they are reasonably understood to communicate statements and assertion of fact regarding Plaintiff.

42.     The False Statements are false and defamatory as they impute on Plaintiff conduct and interactions which did not occur, and therefore, do not represent real events.

43.     The defamatory meaning of the False Statements is apparent from the face of the publications without the aid of extrinsic proof, as they are intended to and do indeed disparage and injuriously affect Plaintiff in her trade and profession.

44.     The False Statements, among other things, falsely accuse, either directly or by innuendo, insinuation or inference, Plaintiff of criminal, immoral, unprofessional, incompetent, and/or unethical conduct including conduct specific to her trade and profession.

45.     The False Statements tend to harm Plaintiff's reputation by lowering Plaintiff's otherwise good standing in the mind of a reasonable member of the community.

46.     Defendants authored and published the False Statements regarding Plaintiff with

knowledge either that the assertions contained therein were false or acted with reckless disregard as to truthfulness.

47.    The False Statements were intentionally communicated to the public in bad faith and with actual malice.

48.    Defendants authored and published the False Statements without privilege or authorization, or in excess and abuse of any otherwise applicable privilege or authorization.

49.    Plaintiff has suffered reputational harm, loss of revenue, mitigation expenses, mental anguish, distress, humiliation, and other injuries as a direct and proximate result of the False Statements published by Defendants.

50.    Plaintiff has incurred damages as a direct and proximate result of the False Statements, and also as a result of repetition of the defamatory statements by third persons, such repetition being the natural consequence of Defendants' original publications and/or the express or implied authorization of such repetition.

51.    As a direct and proximate result of the False Statements, Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

## IV.    SECOND CLAIM FOR RELIEF

### *False Light*

52.    Plaintiff repeats and realleges each and every allegation contained above and below as if fully set forth herein.

53.    Defendants False Statements placed Plaintiff in a false light, including but not limited to falsely describing Plaintiff's conduct and business practices.

54.     Defendants authored and published the False Statements without authorization, privilege or in clear abuse of any privilege which might otherwise apply.

55.     The False Statements made and published by Defendants would be highly offensive to a reasonable person, and continue to be highly offensive to Plaintiff, because the False Statements unreasonably attack Plaintiff's conduct and character in a manner that exceeds the bounds of decency.

56.     Defendants authored and published of the False Statements with actual malice and the knowledge that the impressions created therefrom are false or they acted with reckless disregard as to their falsity.

57.     Defendants' False Statements placing Plaintiff in a false light are intended to and have caused Plaintiff injury including ongoing mental anguish and suffering.

58.     As a direct and proximate result of the False Statements, Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

## V.     THIRD CLAIM FOR RELIEF

### *Interference with Business Advantage*

59.     Plaintiff repeats and realleges each and every allegation contained above and below as though fully set forth herein.

60.     Prior to publication of the False Statements, Plaintiff had valid business relationships with her downlines, and had valid business relationships with long terms customers and purchasers of Paparazzi Jewelry.

61.    Prior to publication of the False Statements, and as a result of Defendants prior involvement with Paparazzi Jewelry, Defendants had knowledge of Plaintiff's business relationships.

62.    Defendants intentionally, published the False Statements online in an attempt to destroy Plaintiff's reputation and business relationships.

63.    Defendants published the False Statements with malice.

64.    As a direct and proximate result of Defendants conduct, Plaintiff has suffered significant reputational harm and sustained actual damages including, but not limited to, loss of capital revenue, lost productivity, expenses incurred, and loss of intangible assets in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), with the exact amount to be proven at trial.

## VI.    FOURTH CLAIM FOR RELIEF

### *Conspiracy*

65.    Plaintiff repeats and realleges each and every allegation contained above and below as though fully set forth herein.

66.    Defendants Tracey Lynn Reid, Geraldine Souza and Savannah Whitaker acted maliciously and in active concert in publishing the False Statements regarding Plaintiff.

67.    Defendants acted upon an agreed upon plan amongst one another to defame Plaintiff, place Plaintiff in a false light, and interfere with Plaintiff's business advantage.

68.    As a direct and proximate result of the False Statements, Plaintiff has suffered significant reputational harm and sustained actual damages including, but not limited to, loss of capital revenue, lost productivity, expenses incurred, and loss of intangible assets in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), with the exact amount to be

proven at trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiff Patricia Shevlin demands judgment against Defendants Tracey Lynn Reid, Geraldine Souza and Savannah Whitaker, jointly and severally, as follows:

a.    Issuance by this Court of an Order decreeing that the False Statements regarding Plaintiff are false and defamatory;

b.    Injunctive relief that the Defendants are:

   i.    prohibited from creating or publishing statements regarding Plaintiff which defame, disparage, or contain libelous statements regarding Plaintiff; and

   ii.    ordered to take all actions necessary to remove all of the False Statements published from the Internet, including but not limited to, requesting removal of the False Statements from the Facebook pages of all Defendants and all groups Defendants are associated with;

c.    Actual and/or compensatory damages in an amount to be proven at trial;

d.    Pre- and post-litigation interest at the maximum rate provided by law;

e.    Reasonable attorney's fees to the extent permitted by law;

f.    Costs of this action; and

g.    For any and all other relief as this Court may deem Plaintiff just and proper.

Respectfully submitted,

/s/ Daniel E. Hancock
Daniel E. Hancock
Laura M. Brymer
FULTZ MADDOX DICKENS PLC
101 S. Fifth St., 27th Floor
Louisville, KY 40202
502.588.2000 (t)
502.588.2020 (f)
dhancock@fmdlegal.com
lbrymer@fmdlegal.com

11

and

Andrew C. Stebbins (OH 0086387)*
Minc LLC
200 Park Ave., Suite 200
Orange Village, Ohio 44122
Phone: (216) 373-7706
Fax: (440) 792-5327
E-Mail: astebbins@minclaw.com
*Pending *Pro Hac Vice Admission*

*Attorneys for Plaintiff Patricia Shevlin*